GEORGE H. DOWNING, APPELLANT, V. A. F. LEWIS ET AL., APPELLEES.

FILED OCTOBER 5, 1899.    No. 10,840.

1. **Contracts in Restraint of Trade:** INJUNCTION.  The contract in suit, one of the class known as contracts "in restraint of trade," being limited as to time and territory, and its stipulations reasonable, *held* valid and enforceable by injunction.

2. ———: ———: PUBLIC POLICY.  The said contract determined not so contrary or obnoxious to public policy as to render it invalid.

3. ———: GOOD-WILL.  The question of the ownership or interest of one of the parties to a contract of sale of a business and good-will determined not placed in issue by the pleadings.

4. **Sales:** HUSBAND AND WIFE.  A married woman who joined with her husband in a contract of sale *held* to have by her acts acquiesced in the payment of the consideration to him.

APPEAL from the district court of Buffalo county. Heard below before H. M. SULLIVAN, J.  *Reversed.*

The opinion contains a statement of the case.

*Marston & Marston,* for appellant:

The contract is enforceable.  There was no stifling of competition.  The only restraint of trade was limited to a short period and to a single locality.  See *Brown v. Kling,* 35 Pac. Rep. [Cal.], 995.

*E. C. Calkins, W. D. Oldham* and *H. M. Sinclair, contra:*

The contract is one in restraint of trade; and, under the facts proved, should be declared void as against public policy.  See *Taylor v. Blanchard,* 13 Allen [Mass.],

370; *Callahan v. Donnolly*, 45 Cal., 152; *Lange v. Werk*, 2 O. St., 519; *Berlin Machine Works v. Perry*, 71 Wis., 495; *State v. Nebraska Distilling Co.*, 29 Nebr., 700; *Nester v. Continental Brewing Co.*, 161 Pa. St., 473; *Texas Standard Oil Co. v. Adone*, 83 Tex., 650; *Hooker v. Vandewater*, 4 Denio [N. Y.], 349; *More v. Bennett*, 140 Ill., 69; *India Bagging Ass'n v. Kock*, 14 La. Ann., 164; *Central Ohio Salt Co. v. Guthrie*, 35 O. St., 666; *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Pa. St., 173; *Western Woodenware Ass'n v. Starkey*, 84 Mich., 76; *Wright v. Ryder*, 36 Cal., 342; *Chapin v. Brown*, 83 Ia., 156; *Richardson v. Buhl*, 77 Mich., 632; *Hazlehurst v. Savannah, G. & N. A. R. Co.*, 43 Ga., 13; *West Virginia Transportation Co. v. Ohio River Pipe Line Co.*, 22 W. Va., 600; *Pittsburg Carbon Co. v. McMillin*, 119 N. Y., 46; *People v. North River Sugar Refining Co.*, 54 Hun [N. Y.], 354; *Gloucester Isinglass & Glue Co. v. Russia Cement Co.*, 154 Mass., 92.


HARRISON, C. J.

August 6, 1895, there was sold to the appellant the business and good-will of the Lewis Laundry, located in the city of Kearney. The agreement of sale and purchase was embodied in a written instrument, which was signed by the appellees herein, who it appears were husband and wife. It was of the expressed covenants on the part of the appellees that they would not, for themselves nor for other persons, engage in the laundry business in the city of Kearney during five years from August 11, 1895. The present action was commenced by appellant, the basis of the complaint being an alleged violation on the part of appellees of the stipulation of the contract to which we have just referred. The prayer of the petition was that the appellees be enjoined from further violations of their agreement. To the pleading appellees made objections, which were treated as in effect a general demurrer, and as a result of a hearing the restraining order which had been allowed was vacated, and

the cause dismissed. An appeal was perfected to this court, and on hearing the judgment was reversed and the cause remanded to the district court for further proceedings. The opinion rendered is reported in 56 Nebr., 386. After the suit was again lodged in the district court, separate answers were filed for appellees, to which there were replies; and of the issues joined there was a trial which resulted in a judgment of dismissal of the action; and the plaintiff again appeals.

By the former decision in the case on appeal to this court, it was established that the agreement between the parties is valid, and capable of enforcement by injunction. Ordinarily, the adjudication to which we have referred would be the law of the case on the points necessarily involved in the litigation and covered by the decision. But it is insisted herein that the answers and evidence cast additional light on the subject, and call for a further consideration of the involved matters. We have concluded to further discuss at least some, if not all, of them.

At the close of the trial, which occurred after the cause was returned to the district court from this, the following findings were made:

"The court finds that the contract, as alleged and set out in the petition, was signed by the defendants, and further finds that the defendants were acquainted with the terms of said contract at the time they signed the same, and that the same was signed voluntarily by them.

"2. That at that time they expected to leave the city of Kearney and did not expect to engage in the business of laundering in said city.

"3. The court further finds that at the time said contract was made, and long prior thereto, the plaintiff Downing was engaged in the laundry business in said city, and was running what was known as the Kearney Steam Laundry, and that his purpose in purchasing the business and good-will of the defendants, and his only purpose, was to do away with the competition which

they in their business made to his business, and to secure their patrons.

"4. The court further finds that the defendant Mary J. Lewis received no consideration for said sale or for said contract, but that the money went to her husband, and he alone was conducting the business at that time.

"5. The court further finds that none of the machinery or other appliances of the business used by the defendants were delivered to the plaintiff, and that neither the plaintiff nor any one in his stead took charge of said business or operated said business after said purchase."

The answer of Albert F. Lewis was as follows:

"1. That at the time of the signing by him of the contract set out in the said petition he supposed it was limited to the conducting of a laundry business by the defendants in the city of Kearney.

"2. That there was no stipulation in said contract that the defendants should not work for other people in said city.

"3. That at the time of the making and signing of said contract the plaintiff was engaged in the business of operating a laundry in said city of Kearney, in competition with the laundry of the defendant.

"4. That he signed said contract because of the threats on the part of the plaintiff to lower the price of laundry work in the city of Kearney.

"5. That he did not read said contract before signing the same, and did not know what it contained.

"6. That no property was sold or passed from the defendants to the plaintiff under the said contract.

"7. That said contract is against public policy and void.

"8. That he denies each and every other allegation in the said petition contained not herein admitted or denied."

That of Mary J. Lewis stated: "That she is a married woman, and the wife of the defendant A. F. Lewis; that at the time of the signing by her of the contract set out

in the petition of the plaintiff the same was not read by her, and she did not know what it contained; that she did not know that it had in it a provision that she should not work in the laundry business in the city of Kearney, Nebraska, for the time stated in said contract, or for any person in said city engaged in the laundry business; that she was told by her husband to sign the same, and did so, but that she received no part or portion of the consideration named in the contract; that said contract is not binding upon her, for the reason that it is against public policy and void; that she denies each and every other allegation in the said petition contained not herein specifically admitted or denied."

The evidence and findings make it clear that the appellees understood the contract when they signed it; also that they then expected to remove from the city of Kearney, and it further appears from the evidence that the appellant very much desired to increase his business in order that his "plant" might be run nearer to its capacity. His was a steam laundry; and, at the time of the transaction in controversy, it was not doing its full work because of lack of sufficient custom. The contract between the parties, to the extent it in terms prohibited the engagement of the appellees in the laundry business, was limited as to both time and territory, and in such respects reasonable. These things established as between the immediate parties to it, the agreement was valid and within the rules of law governable.

One of the main reasons against the recognition of contracts of the nature of the one herein questioned, such agreements being generally denominated "contracts in restraint of trade," is that the public will be deprived of the benefit of the industry of the party who is to be retired from business for a stated time in a certain ascertained locality, and of the benefits of the continuance of the party in business is the competition it may afford with others engaged in like enterprises, and undoubtedly in any case which involves one of these stipulations, if it

appears that the result will be to an appreciable degree harmful to the public good, policy requires that the stamp of disapproval be placed upon it, and the courts will not hesitate to declare it invalid. In the matter before us it appeared that the list of prices charged for services rendered by the Lewis Laundry was, so Albert F. Lewis testified, a duplicate of the like list of the steam laundry. They were then running at the same charges to the public, no difference to customers, except as the work done by one might be better than that done by the other, or as what was done by the one might please a customer more than the laundering of the other. There were no particular facts shown which, singly or in combination, would demand of the court that in the interest of the public it declare the contract invalid. Any such contract must to some extent destroy competition, but to be void it must unreasonably disturb such relations of the community as to be an infringment on the rights of the public, and this we think not true in this case, although it appeared that there were at the time of the contract but the two laundries in the city of Kearney. The fact that for the time being the effect of the agreement was to leave but the one laundry in the city was not in or of itself sufficient to render it void and unenforceable, and herein there were no concomitant circumstances shown of such nature that, together with the fact that to recognize the contract would possibly for a time require the people of the city to depend upon but the one laundry, furnished reason for adjudging the stipulation in question without validity.

It is argued for Mary J. Lewis that she did not own any interest in the laundry which was sold, and was not bound by its sale, notwithstanding she signed the agreement. To this it must be said that no such issue was raised by the pleadings. It is true that there was evidence to the effect that she was not the owner of the laundry business nor materially interested therein; but this can not avail, since it was not of the matters properly presented for trial.

It is also urged for Mrs. Lewis that she did not receive any part of the consideration for the agreement. Mrs. Lewis signed the contract as one of the owners of the Lewis Laundry, and, as we have seen, no issue was made upon this point; hence she must be held to have been interested with her husband in the business. She was present when the agreement was executed, and signed it, and at the time she did so, as the trial court determined, she was acquainted with its terms, and she stated in her testimony that after she had signed the contract she left the office to which the parties had gone to complete the agreement; that she did not receive any money, but she supposed her husband did receive the consideration named; and it appears further that it was paid to her husband. From this it must be held that she knew the husband was to get the money and was willing that payment be made to him, and in this view of the matter she can not now, for the purpose of avoiding her agreement, say she did not receive the consideration. The judgment of the trial court is erroneous, and is reversed and the cause remanded, not for another trial, but for a decree in favor of appellant for the relief asked in his petition.

REVERSED.